IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

AARON YORK, JR., )
 )
 Plaintiff, )
 )
v. ) Case No. CIV-11-380-FHS
 )
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
 )
 Defendant. )

**REPORT AND RECOMMENDATION**

Plaintiff Aaron York, Jr. (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on February 27, 1960 and was 50 years old at the time of the ALJ's decision. Claimant completed his education through the tenth grade, taking special education classes. Claimant has worked in the past as a sheet rock applicator.

3

Claimant alleges an inability to work beginning December 31, 2006 due to limitations resulting from pain in his neck, shoulders, elbows, hands, back, hips, knees, ankles, and feet.

**Procedural History**

On December 8, 2008, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On May 25, 2010, a video administrative hearing was held before ALJ Michael A. Kirkpatrick in Fort Smith, Arkansas. On August 30, 2010, the ALJ issued an unfavorable decision on Claimant's applications. On August 26, 2011, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a range of medium work with limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in: (1) engaging in a proper credibility analysis; (2) reaching an improper RFC determination; and (3) making an improper finding at step five as to the jobs Claimant could perform based upon faulty hypothetical questioning of the vocational expert.

**Credibility Analysis**

Claimant contends the ALJ failed to properly evaluate his credibility. In his decision, the ALJ determined Claimant suffered from the severe impairments of major depressive disorder, personality disorder, generalized anxiety disorder, history of polysubstance abuse, lumbar disc disease, generalized osteoarthritis, cervical disc disease, insomnia, residuals of testicular cancer, and obesity. (Tr. 11). The ALJ concluded, however, that Claimant retained the RFC to perform medium work except that he can only occasionally climb ladders, ropes, or scaffolds, and can only occasionally stoop. The ALJ also found Claimant retained a mental RFC to perform simple, unskilled tasks but not detailed or complex tasks, which does not require interaction with the general public. (Tr. 13-14).

Claimant began receiving treatment for shoulder, elbow, lower back, and knee pain from Dr. Steve Schoelen in January of 2005 and

continued seeking treatment through May of 2008. In each instance, Dr. Schoelen found Claimant to be "alert and oriented and in no acute distress." (Tr. 193-207). Dr. Schoelen prescribed various medications to address the pain and inflammation. Id. Dr. Schoelen diagnosed Claimant with cervical and lumbar disc disease, elbow and forearm tendonitis, lumbar spasm and chronic low back pain, restless leg syndrome and insomnia, AC joint tendonitis with trigger point tenderness, chronic lumbago, right knee pain, sleep disorder, generalized anxiety, weight problems, cervical myalgias, bilateral shoulder pain, chronic depression, right shoulder osteoarthritis with trigger point tenderness, and dyspepsia. Dr. Schoelen noted decreased range of motion and tenderness in Claimant's right shoulder. Id.

On September 15, 2008, Claimant was examined by Dr. Myra Gregory. Dr. Gregory found Claimant suffered from chronic back pain. She determined Claimant was alert and oriented, showed positive straight leg raising and decreased range of motion in low back. (Tr. 212).

On October 16, 2008, Claimant sought mental health treatment from the Carl Albert Community Mental Health Center. Claimant reported numerous problems including suicidal ideation - manifested by obtaining a gun, use of alcohol and/or drugs, experiencing

6

serious depression, and anxiety. (Tr. 215-16). Claimant was noted to have poor anger management and no coping skills, using drugs to cope. (Tr. 217). Claimant was diagnosed with depressive disorder, NOS, anxiety disorder, NOS, and polysubstance abuse. Claimant's GAF was estimated at 50. (Tr. 218).

On October 22, November 21, and December 19, 2008, Claimant was again attended by Dr. Gregory complaining of neck and shoulder pain. Claimant had positive straight leg raising and decreased range of motion in his legs. (Tr. 209-11).

On December 22, 2008, Claimant was seen by Dr. Sridevi Nagumalli at the Carl Albert Community Mental Health Center. Claimant suffered from decreased sleep, low self image, guilt, and suicidal ideation with a gun. Claimant's mood was noted as anxious and his affect was constricted. Dr. Nagumalli diagnosed Claimant with substance induced mood disorder, cannabis abuse, and meth dependence in partial remission. Claimant was prescribed medication for the conditions. (Tr. 213).

On February 26, 2009, Claimant was underwent a consultative physical examination by Dr. Ronald Schatzman. Dr. Schatzman found Claimant suffered from chronic neck and back pain by history, methamphetamine abuse, edentulous, shoulder pain (probable rotator cuff), residuals of testicular cancer, and obesity. (Tr. 219-21).

On March 13, 2009, Claimant underwent a consultative psychological evaluation by Dr. Denise LaGrand. Dr. LaGrand diagnosed Claimant with substance abuse/dependence, in partial remission, major depressive disorder, severe, without psychotic symptoms, personality disorder, NOS (borderline, schizoid, avoidant, obsessive-compulsive and paranoid traits). Claimant's GAF was assessed at 40. (Tr. 230).

On April 6, 2009, Dr. Sally Varghese completed a Psychiatric Review Technique form. She found Claimant was moderately limited in the areas of difficulties maintaining social functioning and difficulties in maintaining concentration, persistence, or pace. (Tr. 243). Dr. Varghese also completed a Mental Residual Functional Capacity Assessment on the same date. She concluded Claimant was markedly limited in the areas of the ability to understand and remember detailed instructions, ability to carry out detailed instructions, and the ability to interact with the general public. (Tr. 247-48). Dr. Varghese found "Claimant is able to perform simple tasks with routine supervision. He is able to relate appropriately to supervisors and coworkers in an appropriate manner. Claimant is not able to relate appropriately to the general public." (Tr. 249).

On February 24, 2010, Claimant was seen by Dr. Steven Medeiros

8

complaining of pain in his back, knees, and shoulders with constant joint stiffness. (Tr. 321). Claimant was diagnosed with lumbar disc disease, generalized osteoarthritis, multiple sites, and a cardiac pacemaker. (Tr. 323).

Claimant's problems continued in a visit to Dr. Medeiros in April of 2010. (Tr. 325-31).

On June 24, 2010, in a visit to Dr. Medeiros, Claimant complained of lumbar disc disease complications after he was "out doing some yard work." (Tr. 362). Dr. Medeiros diagnosed Claimant with generalized anxiety disorder, generalized osteoarthritis, multiple sites, lumbar disc disease, overweight, cardiac pacemaker, and subcutaneous nodules. (Tr. 363).

With regard to Claimant's credibility, the ALJ found Claimant's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent that they are inconsistent with the RFC assessment. (Tr. 17). The ALJ based this conclusion on (1) Claimant's failure to report muscular skeletal pain in his history when being seen for chest pain; (2) Claimant's statements to his physician that he was doing yard work, which he later testified he could not perform; and (3) Claimant stated he takes his son to school, runs errands for his wife, helps his wife care for his disabled son, and takes out the

trash.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. It must be noted that the ALJ is not required to engage in a "formalistic

factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

This Court is disturbed by the ALJ's statements of supposition and unsupported conclusions in reaching his credibility determination. For example, he concludes assisting in taking care of his disabled son and driving his other son to school "can be quite demanding both physically and emotionally". The ALJ did not inquire as to the demanding nature of this activity but only concludes the same. Further, the ALJ states that "the record taken as a whole strongly suggests that the claimant has exaggerated symptoms and limitations." Nothing in the record or in the ALJ's decision supports this stark conclusion. Moreover, the medical record and the conclusions of qualified examining and consultative medical professions support Claimant's claimed limitations. In short, the ALJ determined his RFC assessment represented the end-all of Claimant's limitations without sufficient evidentiary support for his conclusions on Claimant's credibility. On remand, the ALJ shall reassess his credibility determination based upon the actual medical record rather than his ethereal and unsupported conclusions.

## RFC Determination

Claimant first indicates the ALJ improperly concluded he could

perform medium work because his arthritis limits his abilities to lift 50 pounds occasionally and 25 pounds frequently as well as standing and/or walking for 6 hours. The Physical Residual Functional Capacity Assessment of Dr. Brian Boggs dated April 13, 2009 supports the ALJ's conclusions in this regard. (Tr. 267-68).

Claimant next states the ALJ should have obtained a consultative assessment of his work-related mental limitations. Sufficient evidence exists in the record regarding Claimant's limitations without further consultative testimony.

Claimant also curiously states that the ALJ assigned weight to medical opinions which were not actually opinions. This Court finds the ALJ did not improperly consider evidence which did not contain medical conclusions or work-related limitations.

Claimant states the ALJ improperly rejected the opinion of Dr. Schoelen and Dr. Medeiros. In both instances, the ALJ rejected these physicians' findings because they contained no specific limitations on Claimant. (Tr. 15, 17). The ALJ cannot reject the diagnoses simply because the treating physicians do not offer an opinion on limitations. Rather, the ALJ must order such consultative evaluations of the diagnosed conditions if he has some question of the limitations the conditions may cause. On remand, the ALJ shall obtain such consultative evaluations as are necessary

to properly assess the limitations imposed by Claimant's diagnosed medical conditions.

### Step Five Evaluation

Claimant contends the ALJ failed to include all of his limitations in the hypothetical questioning of the vocational expert. Claimant is not specific in the conditions which should have been included in the questioning. This Court finds no inaccuracies or omissions in the hypothetical questions posed to the vocational expert.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

13

DATED this 4th day of January, 2013.

                                      KIMBERLY E. WEST
                                      UNITED STATES MAGISTRATE JUDGE